Salinger, Kenneth W., J.
From 2005 to 2012, Nenita Angeles and Alex Uson were in a partnership to renovate and develop properly located at 10-12 Ashton Place in Cambridge, Massachusetts. They had a falling out in 2012. Uson and his daughter Adriana convinced Angeles to sign a Partnership Dissolution Agreement and to execute a Quitclaim Deed conveying title in the property to Uson, who then had Angeles evicted from the property. Angeles now seeks damages from Uson and his daughter under a variety of legal theories, and also seeks to invalidate the Dissolution Agreement and Deed on theories of duress (alleging that Defendants threatened to file a criminal complaint against Angeles if she did not sign) and unconscionability.
Defendants move to dismiss this action on the grounds that: (1) they have not been properly served; (2) Angeles’s claims that the Deed and Dissolution Agreement are the products of duress are barred by collateral estoppel; and (3) a forum selection clause in the Dissolution Agreement requires that Angeles’s remaining claims be brought in the Philippines, where they could be consolidated with an action for an accounting brought by Uson against Angeles.
The Court rejects Defendants’ challenge to the sufficiency of the service of process, and instead authorizes nunc pro tunc the successful by-hand delivery of the summonses and complaint to the Usons’ home in the Philippines in February 2013. The Court holds that Angeles’s challenge to the validity of the Quitclaim Deed is barred by the judgment in the eviction action, but that none of her other claims are so barred. Finally, the Court holds that the narrow forum selection clause that was drafted by Uson does not apply to the claims raised by Angeles in this action.
1. Service of Process
It is undisputed that the Usons actually received the summonses issued to them and copies of Angeles’s complaint in this action. Defendants nonetheless argue that the case should be dismissed because Angeles did not comply with the required formalities for service of process.
Angeles made substantial and ultimately successful efforts to give the Usons actual notice of this action. She sent copies of the summons and complaint to lawyers from three different law firms, two in Massachusetts and one in the Philippines, who have represented the Usons in their dealings with Angeles. All three firms declined to accept service of process on the Usons’ behalf. Angeles then sent the summonses and complaint to the Usons’ home address in the Philippines by international registered mail, return receipt requested, but she never received either a signed receipt nor a return of the mail as undeliverable. Angeles then hired a law firm in the Philippines to effect service of process, which it did by having one of its paralegals leave the papers at the Usons’ home with a woman who said that she worked for the Usons.
Defendants argue that these attempts at service are legally inadequate, even though the Usons have in fact received the summonses and complaint and are represented by counsel from Foley Hoag LLP in this proceeding. They argue that there is no evidence that the service by international registered mail was ever received by the Usons, and that under both Massachusetts law and Philippines law only a Sheriff or some other authorized process server may effect service by leaving a summons and complaint at someone’s home. Because the paralegal in the Philippines had not been deemed a special process server in advance, Defendants argue that he or she could not make legally effective service of process.
But Massachusetts law gives the Court broad power and discretion to authorize an alternative means of serving process outside the Commonwealth, so long as that alternative means is reasonably calculated to *138 give a defendant actual notice that she has been sued. See G.L.c. 223A, §6(a)(5); Mass.R.Civ.P. 4(e)(5).
Since Angeles’s efforts to serve the Usons by having the summons and complaint left at their home in the Philippines were successful, the Court concludes that it will further the interests of justice to order that the by-hand delivery of process to the Usons’ home was valid and authorized by court order made retroactive nunc pro tunc to December 28, 2012, which is the date that Angeles filed this action. Cf. Marks v. Alfa Group, 615 F.Sup.2d 375, 380 (E.D.Pa. 2009) (reaching same result under Fed.R.Civ.P. 4(f)(3)).
The Court has the power to enter an order authorizing a particular method for serving process outside the Commonwealth nunc pro tunc to an earlier date. See generally Almeida Bus Lines, Inc. v. Department of Pub. Uttls., 348 Mass. 331, 337 (1965) (‘The Supreme Judicial and the Superior courts have statutory power”—as well as inherent common law power—“to issue judgments, orders, and decrees nunc pro tunc”); Diggs v. Diggs, 291 Mass. 399, 400 (1935) (“Courts have inherent powers in appropriate cases to make entries nunc pro tunc”); G.L.c. 235, §4 (court may provide that any “judgment or order” shall take effect as if “entered as of an earlier day”). A nunc pro tunc order may appropriately be used, as in this case, to “validate some proceeding actually taken but by oversight or mistake not authorized!.]” Almeida Bus Lines, 348 Mass, at 337-38, quoting Perkins v. Perkins, 225 Mass. 392, 396 (1917). Indeed, under some circumstances a nunc pro tunc order may even be used to cure a defect of subject matter jurisdiction by retroactively giving a court the power to act. See St. Joseph’s Polish National Catholic Church v. Lawn Care Assocs., Inc., 414 Mass. 1003, 1004 (1993) (rescript) (although Housing Court judge lacked jurisdiction to decide breach of contract, negligence, G.L.c. 93A claims, defect was cured by order issued after judgment entered, but made effective nunc pro tunc to beginning of case, that transferred case to Superior Court and designating judge as a Superior Court justice).
The Court exercises its discretion to order nunc pro tunc that the by-hand service of process to the Usons’ home by a paralegal representing Angeles was authorized and thus lawful and effective.
2. Collateral Estoppel
It is undisputed that Alex Uson brought a summary process action in Cambridge District Court to evict Angeles from 10-12 Ashton Place in Cambridge on the ground that the Quitclaim Deed gave Uson legal title to that property, and that judgment awarding Uson possession of the property was entered on or about September 13, 2012.
The summary process judgment bars Angeles from relitigating her claims that the Quitclaim Deed is invalid. Angeles argued unsuccessfully in the district court proceeding that the Deed was the product of duress. The district court rejected that argument. By ruling in favor of Uson, the district court, necessarily found that the Deed is valid. The doctrine of issue preclusion or collateral estoppel bars Angeles from relitigating that issue. See Bui v. Ma, 62 Mass.App.Ct. 553, 562-63 (2004) (holding that judgment in summary process action barred any further claims regarding validity of lease at issue in eviction proceeding).
However, the judgment in Uson’s favor in the summary process action does not bar Angeles from challenging the validity of the Dissolution Agreement or from asserting any claims other than her challenges to the Quitclaim Deed. “Counterclaims shall not be considered compulsory” in summary process actions, and “shall not be considered waived for the purpose of a separate civil action or actions if not asserted in a summary process action.” Turner v. Community Homeowner’s Ass’n, Inc., 62 Mass.App.Ct. 319, 328 n. 12 (2004), quoting Uniform Summary Process Rule 5. Thus, even if Angeles was entitled to raise her other claims in the district court, she was not required to do so.
Thus, collateral estoppel only bars those portions of Counts IV and v. that seek to invalidate the Quitclaim Deed that transferred title to 10-12 Ashton Place in Cambridge, Massachusetts, from Angeles to Uson.
3. Forum Selection Clause
The Dissolution Agreement provides that “[a]ny action brought in court to enforce this Agreement” must be brought either in the Commonwealth of Massachusetts or in the Philippines “to the exclusion of all other courts, at ALEX’s election.” The same clause provides that any dispute under the Dissolution Agreement “shall be adjudicated under” Massachusetts law. Uson says that he elects to force Angeles to bring all such claims in the Philippines, and that as a result this forum selection clause bars all claims asserted in this action. The Court assumes that this somewhat unusual forum selection clause is enforceable. See generally Boland v. George S. May Intern. Co., 81 Mass.App.Ct. 817, 820 (2012) (when deciding whether a forum selection clause is enforceable, “courts generally should respect the intentions of the contracting parties”).
Interpretation of an unambiguous forum selection clause in a written contract is a question of law to be decided by the Court. Id. at 825. Since the Dissolution Agreement was drafted by Uson, if there were any ambiguity in the forum selection clause it would have to be resolved in favor of Angeles. Id. at 827-28; accord Jacobsonv. Mailboxes Etc. U.S.A., Inc., 419 Mass. 572, 578 (1995).
The Court finds that this forum selection clause is limited by its plain language to claims brought to enforce the Dissolution Agreement, and thus does not apply to Angeles’s claims under the Partnership Agreement, for breach of fiduciary duty, unjust enrichment, or intentional infliction of emotional distress, or to invalidate the Dissolution Agreement. A forum selec *139 tion clause that “relates only to actions to enforce the agreement” does not apply to claims “for precontract misrepresentations,” “for fraud in the inducement,” for other wrongs “allegedly committed before the parties entered into” the contract, or for any other claim that does not involve any attempt to enforce a right established by the contract. Jacobson, 419 Mass. at 578-79 (emphasis in original). Uson could have asked Angeles to sign a much broader forum selection clause, but did not do so. He cannot use whatever rights he might have under this narrow clause to force Angeles, who now resides in Billerica, Massachusetts, to try her claims in the Philippines.
ORDER
The Court hereby ORDERS, that plaintiff Nenita Angeles is and was authorized, retroactive nunc pro tunc to December 28, 2012, to effect service of process upon Alex and Adriana Uson by causing copies of the summonses and complaint in this case to be left at the Usons’ residence located at No. 1 Sitio Ibaba, Bo. Bignay, Valenzuela City, Philippines.
Defendants’ motion to dismiss is ALLOWED IN PART: so much of Counts IV and v. that seek to invalidate the quitclaim deed that transferred title to 10-12 Ashton Place in Cambridge, Massachusetts, are barred by collateral estoppel and are hereby dismissed. However, the motion is also DENIED IN PART: the rest of Counts IV and v. and the entirely of Counts I to III and VI to VIII shall remain in the complaint and in the case.